**FILED**

OCT 27 1999

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILY KEYSER, MARIA SOFIA ROBLEDO, RICHARD M. CISNEROS and ARTURO M. FLORES, | CIV-S-97-2002 GEB/DAD |
| Plaintiffs, | <u>ORDER</u> |
| v. | |
| SACRAMENTO UNIFIED SCHOOL DISTRICT, et al. | |
| Defendants. | |

Defendant Sweeney moves for summary judgment against Plaintiffs' 42 U.S.C. § 1983 Equal Protection, Due Process[1] and First Amendment claims.[2] For the reasons stated below, the motion will be granted.

---

[1]  Plaintiffs subsequently conceded the Section 1983 Due Process claims and thus such claims are dismissed with prejudice in Sweeney's favor.

[2]  Plaintiffs' Complaint originally contained six causes of action against both Defendant Sweeney and Defendant Sacramento Unified School District. However, there are currently no remaining claims against Defendant Sacramento Unified School District, and Plaintiffs dismissed their fourth, fifth and sixth causes of action against Sweeney. The two claims at issue in this order are asserted only against Defendant Sweeney in his individual capacity. <u>See</u> Pls.' Opp'n Def.'s Mot. J. Pleadings; Order dated June 4, 1998.

I.

BACKGROUND

Defendant, James Sweeney, is currently employed as the Superintendent of Schools for the Sacramento City Unified School District.[3] Plaintiffs, Lily Keyser ("Keyser"), Maria Sofia Robledo ("Robledo"), Richard Cisneros ("Cisneros") and Arturo Flores ("Flores") were all employed by the Sacramento City Unified School District as four of thirteen high level administrators who made up the Superintendent's cabinet.[4]

Plaintiffs allege, *inter alia*, that Sweeney violated the Board of Trustees ("Board") of the Sacramento City Unified School District's policies regarding personnel evaluations. Pls.' Compl. at 4. Plaintiffs, and other personnel, in March of 1995, formed an association known as the Sacramento City Schools Management Association ("Association"). McGuire Decl. Ex. P. This Association was formed to oppose Sweeney's management personnel evaluation practices. McGuire Decl. Ex. D. The Association's attorney filed a letter with the Board shortly after the group's formation opposing these employment evaluations. McGuire Decl. Ex. P.

In February 1995 Plaintiffs also met with three Board members to discuss issues regarding Sweeney's handling of federal monies. Pls.' Resp. Def.'s Stmt. Undisp. Facts ¶ 44; Garcia Decl. at 2. Board member Garcia then told Sweeney that Robledo and Keyser made

---

[3] Sweeney was employed as Superintendent on an intermittent basis from 1994 until his permanent and current position as Superintendent of Schools in 1997.

[4] Several of the Plaintiffs remain employees of the Sacramento City Unified School District in other capacities. Pls.' Compl. at 3.

2

1 | allegations against him regarding the unauthorized use of federal
2 | monies. Garcia Decl. at 2. Plaintiff Keyser pursued the federal
3 | monies issue several times subsequent to this initial meeting. Price
4 | Decl. at 4; Keyser Decl. at 53, 122.
5 | Plaintiffs claim that following the Association's complaint,
6 | and Plaintiffs' complaints regarding the unauthorized use of federal
7 | monies, Sweeney took adverse action against them, including issuance
8 | of job refocusing assignments for Robledo, Keyser and Flores in March
9 | 1997 and the issuance of job reassignments to all Plaintiffs in May
10 | 1997. Pls.' Opp. at 9, 10.

## II. ANALYSIS

A.      Standard of Review

Summary judgment is appropriate where the record shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant has the initial burden of establishing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c). If this burden is met, the nonmovant must make a sufficient showing on matters on which the nonmovant will have the burden of going forward with evidence at trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). "The inquiry involved in ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

/
/
/

B.       Section 1983 Claims (First and Third Causes of Action)

    1.    Equal Protection

Plaintiffs first argue that Sweeney discriminated against them based on their membership in the Association, an organization Plaintiffs characterize as an association of minority administrators. Pls.' Compl. at 14. The Association was formed in February 1995 in order to "express [its] concerns about [its members] evaluation." McGuire Decl. Ex. D. Plaintiff Robledo reveals that membership in the Association was anonymous, by stating that "[w]e did not want to be known who we were." McGuire Decl. Ex. D. Membership in the group was offered to other administrators, but only six of thirteen administrators chose to join. The law firm of McGuire and Prentice was hired to represent the Association in March 1995. The Association, remaining anonymous, criticized Sweeney for creating a hostile work environment and disregarding district policies and regulations, in a letter dated March 5, 1995. McGuire Decl. Ex. P. Plaintiffs argue Sweeney has acted in a discriminatory manner towards them, based on their membership in the Association, through job reassignments, hostile treatment and negative evaluations.

To sustain their claim of discriminatory treatment in the face of this summary judgment motion, Plaintiffs must offer proof of discriminatory *intent* based upon membership in the Association. Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1180 (9th Cir. 1998); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998). "To establish a claim of discrimination, there must be a sufficient nexus between the alleged discriminatory [conduct] and the adverse employment decision." Mustafa, 157 F.3d at 1180 (citing DeHorney v. Bank of Am., 879 F.2d 459, 468 (9th Cir.1989)). Such intent may be

proven with both circumstantial and direct evidence. <u>Lowe v. City of Monrovia</u>, 775 F.2d 998, 1011 (9th Cir. 1985). Plaintiffs have provided neither direct nor circumstantial evidence of Sweeney's intentional discriminatory treatment of Plaintiffs based on membership in the Association, and therefore have failed to link membership in the Association to Sweeney's allegedly discriminatory conduct.

Plaintiffs assert that the reorganization of the District, effective July 1, 1997, constituted a discriminatory act based on Plaintiffs' membership in the Association. Although Plaintiffs indicate that they spoke out against or opposed Sweeney's policies in some fashion, Plaintiffs provide no causal connection between Sweeney's allegedly retaliatory acts and their membership in the Association.[5] Instead, Plaintiffs allege that Sweeney "retaliates against anyone who opposes him," which implies that Sweeney would have acted against the Plaintiffs whether or not they were members of the Association. Pls.' Opp. at 15. One of Plaintiffs' witnesses states that Plaintiffs, among others, were identified "as people who would speak our mind," and that he "knew that all of us would be targeted for reassignment." Miura Decl. at 3; see also Price Decl. at 2 (stating that Sweeney "displayed nothing but contempt for anyone who opposed him, be it employee or board member"). Plaintiff Cisneros stated that it was clear to him that Sweeney would retaliate against him as he had retaliated against others who had opposed him. Cisneros

---

[5] For example, Plaintiff Cisneros argues the May 1997 reorganization resulted in a changed title and a difference in pay. See McGuire Decl. Ex. B. Furthermore, he states he was left out of cabinet meetings and that Sweeney made such comments to him as "I really - really haven't dealt with you." <u>Id.</u> However, nowhere does Plaintiff present evidence which links these statements and actions by Sweeney to Cisnero's membership in the Association.

5

Decl. at 4. However, neither Plaintiff Cisneros nor the other Plaintiffs provide sufficient evidence from which a reasonable inference could be drawn that such retaliation occurred because of membership in the Association.[6]

Furthermore, Plaintiffs assert that the members of the Association were anonymous, see, e.g. Mot. for Summ. J. at Ex. B, yet they fail to present evidence that Sweeney even knew who the members of the Association were.[7] Since the Association's communications were made anonymously, through its attorney, the connection between Sweeney's conduct and membership in the group is even more tenuous.

Therefore, because Plaintiffs have failed to provide sufficient evidence that Sweeney acted intentionally to discriminate against Plaintiffs based on their membership in the Association, no genuine issue of material fact exists and Sweeney's motion for summary judgment on Plaintiffs' Equal Protection claim is granted.

2. First Amendment

Plaintiffs next argue that Sweeney retaliated against them because of their communication with the School Board regarding Sweeney's allegedly illegal use of federal monies, as well as

---

[6] In the Complaint, Plaintiffs state that "Sweeney conducted interviews regarding evaluations with Flores during which Sweeney stated 'You're part of this group and I don't trust you,' referring to the association, which consisted of minority managers." See Pls.' Compl. at 5. However, Plaintiffs failed to point to any evidentiary support for this statement, and the Court may not consider such unsubstantiated comments as evidence. See United States v. Allen, 578 F.2d 236 (9th Cir. 1978) (noting that a party opposing a motion for summary judgment must outline some evidence of a factual dispute).

[7] Sweeney stated in his declaration that he did not know who any of the members of the Association were. Mot. Summ. J. at Ex. C.

6

Plaintiffs' affiliation with the Association, in violation of their First Amendment rights of free speech and association. Pls.' Compl. at 16.

Plaintiffs, at a meeting in February 1995, presented their suspicions to the Board regarding Sweeney's misuse of consolidated funds. Virgil Price, a Board member, corroborated that Plaintiffs informed the Board that Sweeney and others may be supplanting Title I and consolidated funds. During the time period in which Ted Kimbrough ("Kimbrough") served as Superintendent[8], Plaintiffs also went to Kimbrough with their concerns that Sweeney was carrying forward the supplanting of Title I money and consolidated funds. In February 1997 Keyser also reported to the State Department of Education that funds were commingled and that funds from previous years had reappeared. Sweeney states that he was unaware of Plaintiffs' February 1995 meeting with the Board. However, Plaintiffs present evidence to the contrary from a former Board member who states that he informed Sweeney of the names of the persons who had complained about the funding issues.

Plaintiffs allege two retaliatory acts were the result of their complaints to the Board. First, Sweeney gave Keyser, Robledo

---

[8] At the time Plaintiffs' first allege they asserted their First Amendment rights, Sweeney served as Deputy Superintendent of School Improvement, and continued in this role through November 1995, when he became Acting Superintendent. Then, in February 1996, he was replaced by Kimbrough, and was transferred to the position of Deputy Superintendent of Operations. In February 1997 Sweeney was reinstated as Interim Superintendent. In October 1997 he was named Superintendent of Schools for the District. It appears that Sweeney supervised the Plaintiffs except for the year during which Kimbrough took over as Deputy Superintendent.

and Flores an "assignment refocus" in March 1997.[9] Cisneros was not given an assignment refocus in March 1997, but claims that in the Fall of 1997 Sweeney gave him "short-fused projects" outside his normal job functions and placed him "out of the loop" of important information within the District.

Plaintiffs claim the second retaliatory act occurred on May 12, 1997, when the Board approved a District-wide reorganization, which resulted in Plaintiffs' reassignment from their current positions to other positions within the District. Plaintiffs allege their salaries were all decreased as a result of this reassignment.

To sustain a wrongful retaliation claim under the First Amendment, Plaintiffs must prove first, that the conduct at issue was constitutionally protected, and second, that such conduct was a substantial or motivating factor in the adverse employment action. Moran v. State of Washington, 147 F.3d 839, 846 (9th Cir. 1998); (citing Board of County Comm'rs v. Umbehr, 518 U.S. 668 (1996)). If Plaintiffs make this showing, to avoid liability, Sweeney would have to show that he would have taken the same action even in the absence of the protected conduct. Id.

A. Constitutionally Protected Speech

Speech is not protected under the First Amendment unless two conditions are met. See Moran, 147 F.3d at 846. First, the speech must "touch on a matter of 'public concern.'" Id. Second, the employee's right to speak must outweigh the government's interest in

---

[9] Sweeney points out the time lapse between the alleged retaliatory acts and the complaints to the board implies there is no correlation between these two events. However, due to the personnel changes in the Superintendent position, Sweeney may not have been in a position to act prior to this time.

avoiding disruption or potential disruption in the workplace. <u>Id.</u> If this balance favors the employee, a First Amendment right will be recognized.

But, to implicate the First Amendment, the speech must involve a matter of public concern. This occurs where "it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" <u>Id.</u> (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983)). The Ninth Circuit has recognized that there is a significant First Amendment interest in encouraging public employees to speak freely on issues of public concern, and to make that information available to the public. <u>Id.</u> at 424. Specifically, "misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern." <u>Id.</u> at 425. When a public employee speaks out "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." <u>Rendish v. City of Tacoma</u>, 123 F.3d 1216, 1223 (9th Cir. 1997).

Plaintiffs allege retaliation based on both communications regarding allegedly illegal and unauthorized use of federal monies and their opposition to the manner in which Sweeney conducted personnel evaluations. Plaintiffs' interest in Sweeney's compliance with personnel evaluation procedures is purely personal, and therefore no public interest exists in such speech, and this expression is insufficient to support Plaintiffs' First Amendment claim. However, allegations of impropriety in the handling of federal funds is

9

communication intended to be protected under the First Amendment because it involves matters of public concern.

Next, "in determining whether speech involving a matter of public concern merits constitutional protection, courts engage in a balancing test, first announced in Pickering v. Board of Education, 391 U.S. 563, 568 (1968). . . ." Brewster v. Board of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 979 (9th Cir. 1998). This entails striking a balance between the interest of the employee "in commenting upon matters of public concern [with] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. "In conducting this balancing, courts must give government employers wide discretion and control over the management of [their] personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch." Brewster, 149 F.3d at 971 (quotations omitted). The Ninth Circuit in Gilbrook v. City of Westminster, 177 F.3d 839, 867-68 (9th Cir. 1999) noted several factors a court may consider in performing the Pickering balance.

> [T]he court should inquire into such matters as whether the speech: (i) impairs discipline or control by superiors, (ii) disrupts co-worker relations, (iii) erodes a close working relationship premised on personal loyalty and confidentiality, (iv) interferes with the speaker's performance of her or his duties, or (v) obstructs the routine operations of the office. . . . Moreover, [the] court [should] [weigh] (vi) whether the speaker directed the statement to the public or the media, as opposed to a governmental colleague, (vii) whether the speaker served in a high-level, policy-making capacity; and (viii) whether the statement was false or made with reckless disregard of the truth.

Id. The speech need not actually disrupt the workplace, a reasonable prediction of disruption in the work environment is sufficient. Brewster, 149 F.3d at 979.

Although Plaintiffs failed to address the Pickering balance, the record does not indicate that Plaintiffs' speech impaired control by Plaintiffs' superiors, disrupted co-worker relations, interrupted job duties and office operations, or was made with reckless disregard of the truth. Thus, these factors weigh in favor of Plaintiffs. However, several factors support Sweeney. First, Plaintiffs speaking out against Sweeney, when he was not present, disrupted their relationship which likely was premised on personal loyalty and confidentiality. Second, Plaintiffs' speech was not directed to the public, but instead, was directed towards Board members in their professional capacity, which could be considered as speech directed to Plaintiffs' governmental colleagues. Thirdly, Plaintiffs were all high-level policy makers within the District, a factor weighing in favor of Sweeney. See Moran, 147 F.3d at 849-50 (noting that high-level officials "must be permitted to accomplish their organizational objectives through key deputies who are loyal, cooperative, willing to carry out their superiors' policies, and perceived by the public as sharing their superiors' aims," and that "the State's interest in avoiding disruption is enhanced when the employee asserting her right to speak serves in a 'confidential, policymaking, or public contact role.'") (citations omitted). But, the "fact-sensitive, context-specific balancing of competing interests" under Pickering need not be ultimately decided since Sweeney has asserted the defense of qualified immunity. See Moran, 147 F.3d at 850 (noting that when deciding an issue of qualified immunity, a court need not definitively resolve the

11

issue of whether or not an employee's speech was protected by the First Amendment, but instead is "faced with the much simpler task of deciding whether or not the law 'clearly' protected [the employee's] right to [speak]"); accord Brewster, 149 F.3d at 981.

### B. Qualified Immunity

The qualified immunity defense requires a determination of whether "the specific facts of this case present one of those rare instances in which Pickering rights are, despite balancing, clearly established." Brewster, 149 F.3d at 980. If the Pickering analysis is not easily decided, the qualified immunity defense shields Sweeney from liability for civil damages since his "conduct [will] not [have] violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Brewster, 149 F.3d at 977 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).

Sweeney asserts that it is dubious to conclude that Plaintiffs' right to speak on the matter at issue was sufficiently clearly established so as to defeat his assertion of qualified immunity. The determination of the constitutional protection of public employees' speech is a fact-sensitive and context-specific determination requiring balancing of competing interests, and therefore the law "regarding public-employee free speech claims will 'rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity under Harlow and its progeny." Id. at 979-80 (citations omitted); cf. Baker v. Racansky, 887 F.2d 183, 187 (9th Cir. 1989) ("[I]f the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered "clearly established" at least in

the absence of closely corresponding factual and legal precedent") (quotations omitted).

Several of the <u>Pickering</u> factors appear to weigh in Sweeney's favor, especially where the close working relationship premised on loyalty eroded after the speech occurred, and where the Plaintiffs occupied high-level policy making administrative positions within the district. Furthermore, Plaintiffs' statements were directed internally, and not to the media or community. Although certainly a close call as to whom the <u>Pickering</u> balance favors, the right at issue is not clearly established.

Furthermore, Plaintiffs, in order to defeat Sweeney's assertion of qualified immunity, have the burden to demonstrate that their rights to speak were so clearly established that the <u>Pickering</u> balance clearly weighed in their favor. <u>Moran</u>, 147 F.3d at 850; <u>Brewster</u>, 149 F.3d at 977. Plaintiffs simply have not discharged this burden.[10]

Therefore, in view of the competing considerations on each side of the <u>Pickering</u> balance, and Plaintiffs' failure to demonstrate that the balance should tip in their favor, Plaintiffs' right to speak was not sufficiently "clearly established" to defeat Sweeney's assertion of qualified immunity.

/
/

---

[10] In making this determination, the Court is not relying on Plaintiffs' failure to present law demonstrating that their rights were "clearly established." <u>See generally</u> <u>Elder v. Holloway</u>, 510 U.S. 510 (1994) (noting that a court in making a qualified immunity determination should use its 'full knowledge of its own [and other relevant] precedents'). The Court is merely noting that Plaintiffs have not addressed the <u>Pickering</u> balance, and thus have failed to demonstrate that their rights to speak were clearly established.

### C. Freedom of Association

Plaintiffs also allege a violation of their Freedom of Association Rights in the Complaint. Although Plaintiffs fail to distinguish their Freedom of Speech and Freedom of Association claims, it appears the Freedom of Association claim is again premised on membership in the Association. However, for the reasons previously stated in this order, Plaintiffs cannot show that membership in the Association was a substantial or motivational factor in Sweeney's conduct, and therefore Sweeney's motion for summary judgment on this claim is granted.

### III. CONCLUSION

For the foregoing reasons, Sweeney's motion for summary judgment on Plaintiffs' remaining causes of action is GRANTED. The Clerk of the Court is directed to enter a judgment for Defendants.

IT IS SO ORDERED.

Dated: October 26, 1999

GARLAND E. BURRELL, JR.
United States District Judge

```
              United States District Court
                        for the
               Eastern District of California
                      October 27, 1999
```

* * CERTIFICATE OF SERVICE * *

2:97-cv-02002

Keyser

    v.

Sacramento City USD

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on October 27, 1999, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

```
   Michael McGuire                     SF/GEB
   McGuire and Prentice
   2020 Marconi Avenue                 MG/DAD
   Sacramento, CA  95821

   A Irving Scott
   Porter Scott Weiberg and Delehant
   PO Box 255428
   350 University Avenue
   Suite 200
   Sacramento, CA  95865
```

 

Jack L. Wagner, Clerk

BY: _____
       Deputy Clerk